BRYAN *v.* BLYTHE and Another, Heirs, &c.

The heir is not bound, in any case, for the debts of his ancestor, beyond the amount of the assets descended.

A bill in chancery containing a claim against a defendant in his individual capacity, and another against him as an heir for the debt of his ancestor, may be objected to for multifariousness; but the objection must be made before the defendant has answered the bill.

If a Court, either of law or of chancery, have no jurisdiction of the *subject-matter* in controversy, it can render no valid judgment or decree upon the merits of the cause.

That the vendor of real estate has no title to the property, is a good defence to an action against the purchaser on a bond executed by him for the purchase-money, whether the suit be brought by the obligee or assignee of the bond.

Nov. Term,
1836.

BRYAN
v.
BLYTHE.
Monday,
March 20,
1837.

THIS was a suit in chancery transferred from the *Marion* Circuit Court, in consequence of the interest of the Circuit Judge,

BLACKFORD, J.—This is a suit in chancery brought by *John Bryan* against the heirs of *Samuel Blythe*, deceased. The bill states that *Bryan*, in the years 1814 and 1815, in *Nicholas* county, *Kentucky*, recovered against *Samuel Blythe* four several judgments amounting in all to about 3,000 dollars; that executions were issued on the judgments, but without effect; that *Samuel Blythe*, as a security for the payment of the judgments, assigned to the complainant a penal · bond executed by *Benjamin I. Blythe*, one of the defendants, to the assignor, for the payment of 3,500 dollars, stating in the assignment that it was not to interfere with the collection of the judgments. The bill further states, that *Samuel Blythe* died a short time before the filing of the bill, leaving the defendants his heirs at law; that no letters of administration have been granted on the estate; that the judgments remain unsatisfied; that *Benjamin I. Blythe's* residence was not, until recently, known to the complainant; and that the bond · remains unpaid. Prayer, that the defendants may be decreed to pay the judgments, and for general relief.

One of the defendants, *Benjamin I. Blythe*, answers the bill, and admits the rendition of the judgments and his execution of the bond to his father, *Samuel Blythe*, deceased. He states, that the bond, with several others, was given in consideration of a tract of land in *Pennsylvania*, which the obligee conveyed to him by deed with general warranty; that this defendant took possession of the premises except a small part, by virtue of the deed, but was soon afterwards evicted by a claimant under a paramount title; that, therefore, the consideration of the bond had failed. The answer of *Samuel Blythe*, the other defendant who is named in the bill, is similar to that of *Benjamin I. Blythe*. He says that his father died in the year 1830, leaving his brother *Benjamin* and himself, with one sister, his heirs at law. These defendants both deny that any property descended to them from their father.

One object of this bill, judging from its face, was to obtain from the heirs of *Samuel Blythe*, deceased, the amount of the judgments which had been obtained against him, in his lifetime, by the complainant. There is no averment in the bill,

however, nor is there the slightest evidence, that any property
descended to the defendants from their father; and the answers
both deny the receipt of any assets whatever. This object
of the bill, therefore, must fail. There is no rule of law more
clear or more just, than that the heirs are not bound, in any
case, for the debts of their ancestor, beyond the amount of the
assets descended. 2 Saund. Rep. 7, note (4).

The other part of the bill is nothing more than a claim by
the complainant, as an assignee of a bond, against the defend-
ant, *Benjamin I. Blythe*, the obligor. The demand here is
against this defendant merely as an individual, for a debt of
his own contracting, and ought not to have been united in the
bill with the other demand against him as an heir, for the debt
of his ancestor. The bill, in consequence of its containing
both these demands, might have been objected to for multifa-
riousness: but as the defendants have answered the bill, the
objection to it merely for multifariousness cannot now be
made. *Ward* v. *Cooke*, 5 Madd. 122.

Another objection to this part of the bill is, that it shows
plainly on its face, that the complainant's remedy on the bond
is exclusively at law. A Court of chancery has no jurisdic-
tion in the case of a contract for the mere payment of money.
*Brough* v. *Oddy*, 1 Tamlyn, 215. The assignee of a bond has
the same right, by our law, to sue on it in a Court of law that
the obligee has; and his remedy is confined to that Court.
The complainant may suppose, that, as this objection was not
made by demurrer, it is too late to make it now. We think,
however, that if a Court, whether of law or of chancery, have
no jurisdiction of the *subject-matter* in controversy, it can ren-
der no valid judgment or decree upon the merits of the cause.
The following language on the subject is used in a modern
work on pleading: "It is a fatal objection to the jurisdiction
of any Court, that it has not cognisance of the *subject-matter*
of the suit; that is, that the nature of the action is such as the
Court is, under no circumstances, competent to try: as if a
real action were brought in the King's Bench, or a cause, ex-
clusively of *admiralty* jurisdiction, in any Court of common
law. In any such case, neither a plea to the jurisdiction, nor
any other *plea*, would be *necessary* to oust the jurisdiction of
the Court. The cause might be dismissed on motion; and
even without motion, it would be the duty of the Court to

Nov. Term, 1836.

BRYAN v. BLYTHE.

dismiss it *ex officio;* for the whole proceeding would be *coram non judice* and utterly *void.*" Gould on Plead. 236. And, in a suit in chancery, Lord *Hardwicke* says—" that a Court of equity, which can exercise a more liberal discretion than common law Courts, if a plain defect of jurisdiction appears at the hearing, will no more make a decree than where a plain want of equity appears." *Penn* v. Lord *Baltimore,* 1 Ves. Sen. 444 (1). From this view of that part of the cause which respects the claim on the bond, it is evident that, as a Court of chancery, we could not render a decree for the complainant, though the defence relied on were not proved.

But if this objection as to the jurisdiction of the Court did not exist, we could not sustain the complainant's demand on the bond. The defence, founded on a failure of consideration, is clearly made out by the evidence on the record. *Samuel Blythe,* the obligee, had no title to the land in part consideration of which the bond was given: that point was settled, after the execution of the bond, by the Supreme Court of *Pennsylvania* where the premises are situated. Such a defence by the purchaser, in an action against him on a bond given for the purchase-money, is decided to be valid in the case of *Leonard* v. *Bates, May* term, 1822. And the statute gives the obligor the same defence, existing before notice of the assignment, in an action against him by the assignee, that he would have had if the suit were by the obligee. Rev. Code, 1831, p. 94 (2).

*Per Curiam.*—The bill is dismissed, but without costs.

*C. Fletcher* and *O. Butler,* for the complainant.

*J. Morrison,* for the defendants.

(1) Accord. *Cummins* v. *White,* in this Court, *November* term, 1837. *Contra, Underhill* v. *Van Cortlandt,* 2 Johns. Ch. R. 339, and *Livingston* v. *Livingston,* 4 id. 287. The Circuit Court of the *U. States,* third circuit, disapproves of these *New-York* cases, and says that an objection to the jurisdiction of a Court of chancery, or to the want of equity in the bill, cannot be overruled for the want of a demurrer or plea, but must be sustained whenever the defect appears by the bill, the answer, or the proofs in the cause. *Baker* v. *Biddle,* 1 Baldw. 394.

(2) Accord. Rev. Stat. 1838, p. 119.