THE MUTUAL BENEFIT LIFE INSURANCE COMPANY *v.* MIL-
LER, ADMINISTRATRIX.

39 475
133 381

PRACTICE.—*New Trial.*—*Assignment of Errors.*—*Supreme Court.*—Errors
occurring during the trial of an action in the court below must be set forth in
a motion as reasons for a new trial, and, except the overruling of that motion,
cannot be assigned for error in the Supreme Court.

SAME.—*Judgment.*—If a motion for a new trial is correctly overruled, judgment
follows as of course, and the assignment of error that the court below erred in
rendering the judgment has no foundation.

SAME.—*Instructions.*—Where counsel for a party, openly, in court, in the pres-
ence of the adverse party, asked the court that the instructions to the jury be
in writing, and afterward, when it was too late for the adverse party to make
such request, withdrew his request, the adverse party could not complain of
such withdrawal; for, if he desired the instructions to be in writing, he should
have preferred his own request.

CONTRACT.—*Life Insurance.*—*Policy.*—Where a policy of life insurance, on its
face, refers to the declaration, and the declaration refers to the particulars of
the insured, given by him in answer to questions, these, as one instrument,
constitute the agreement of the parties to the policy.

SAME.—*Warranty.*—A covenant or agreement, to become a warranty, need not
appear on the face of the policy, but may be on a paper referred to and made
a part of the policy.

SAME.—Questions propounded to, and answered by, the insured in his application
for a policy are designed to induce a full and fair statement of the physical
condition of the applicant, and the answers are warranties that the facts are
as stated.

SAME.—*"Spitting of Blood."*—Where the applicant, to a question in the appli-
cation whether since childhood he had had "spitting of blood," answered,
"No," which was untrue;

*Held,* that the answer was material, and also a warranty that he had not had
"spitting of blood," from any cause.

SAME.—*Representations.*—The difference between a warranty and a representa-
tion is, that a warranty must be true, while a representation must be true only
so far as the representation is material to the risk; and it is material when a
knowledge of the truth would have induced the insurers to have refused the
risk or charged a higher rate of premium.

APPEAL from the Vanderburg Circuit Court.

DOWNEY, J.—This was an action by the appellee, as ad-
ministratrix of the estate of Herman A. Miller, deceased,
against the appellant, on a policy of insurance upon the life
of the deceased. It was provided in the policy, that if the
declaration made by or for the assured, of even date with

the policy, and upon the faith of which the agreement was made, should be found in any respect untrue, then in such case the policy should be null and void. It was stipulated in the declaration, made and signed by the deceased at the time of his application for insurance, that the answers of himself, his physician, and his friend, should be the basis of the contract. In the particulars given of himself, the following questions and answers occurred:

"10. Has the party had, since childhood, disease of the heart, rupture, fits, dropsy, liver complaint, bilious colic, rheumatism, gout, habitual cough, bronchitis, asthma, spitting of blood, consumption, paralysis, apoplexy, insanity, fistula, ulcers, or disease of the kidneys or bladder, and which? No.

"11. Has the party had any sickness within the last ten years? if so, what? Yes, scarlet fever, eight years ago.

"12. Has the party now any disease or disorder? if so, what? No."

The first paragraph of the answer alleges, that the answer to the tenth question was false, in this, that before the time at which said answer was made, the said Herman A. Miller had had spitting of blood, and had had, and then had, consumption; and that the answer to question eleven was false, in this, that prior to the time at which said answer was made, said Miller had had sickness other than scarlet fever eight years before, to wit, bleeding of the lungs; and that the answer of said Miller to the question numbered twelve was false and untrue, in this, that at the time when said answer was made, the said Miller had consumption of the lungs.

The second paragraph of the answer alleges, that the execution and delivery of the said policy of insurance was obtained by the fraud and misrepresentation of said Miller, in this, that he pretended and represented to the defendant, at the time when he applied to the defendant to make and deliver to him the said policy of insurance, that he never had, since childhood, had spitting of blood, whereas, in truth

and in fact, he had had spitting of blood within one year prior to said application; and that he had had no sickness within the past ten years other than scarlet fever, whereas, in truth and in fact, he had had, within the past one year, bronchitis and bleeding of the lungs; and that he then had no disease, whereas, in truth, he then had the disease known as consumption; and that he had not had any medical attendant for the past seven years, when he had been attended by at least two physicians within the past seven years. All of which representations the said Miller well knew to be false.

Issue was formed by a general denial of the paragraphs of the answer. There was a trial by a jury, and general verdict for the plaintiff, and also certain special findings.

The defendant moved the court for a new trial, because,

1. The verdict was contrary to law.

2. It was contrary to the evidence.

3. It was not sustained by sufficient evidence.

4. Because error of law occurred at the trial of the cause, which was excepted to at the time by the defendant, in this, that the court, in giving instructions to the jury, gave instructions contrary to law.

5. Because of error of law occurring at the trial of the said cause, which was excepted to at the time by defendant, in this, that the court refused to give to the jury instructions asked for by the defendant, which said instructions were according to law.

6. Because the defendant and her counsel were surprised at the withdrawal, by the counsel for the plaintiff, of his demand for written instructions, after he had notified the court and defendant's counsel that he made such a demand; such withdrawal having been made without notice to the defendant or her counsel, and a knowledge of which did not come to defendant or her counsel until too late to make such a demand on their own behalf.

7. Misconduct of the counsel for plaintiff, in withdrawing his demand for written instructions, after public notice

of such demand, without notifying the defendant or her counsel of such withdrawal.

This motion was overruled by the court, and final judgment rendered on the verdict of the jury for the plaintiff.

The errors assigned are:

1. That the court erred in giving to the jury the instructions set out in the record.

2. The court erred in refusing, at the request of the defendant, to give the instructions asked for by appellant, and which are set out in the record, and numbered 1, 2, 3, 4, 5, 6, 7, and 8.

3. The court erred in overruling the motion of appellant to set aside the verdict of the jury and grant her a new trial herein.

4. The court erred in rendering the judgment against appellant, which is set out in the record.

For the errors occurring during the trial, we must look to the reasons assigned in the motion for a new trial, and not to the assignment of errors, except so far as it alleges the improper overruling of that motion. The first and second assignments of error must, therefore, be disregarded by us. The fourth alleged error has nothing on which to rest. If the motion for a new trial was properly overruled, the judgment followed as of course. We shall then proceed to examine the reasons which were assigned for a new trial.

Nothing is urged under the first reason for a new trial, that is, that the verdict was contrary to law.

The second and third reasons are, that the evidence was not sufficient to justify the finding of the jury.

The policy was made on the 3d day of September, 1869. It became material to know, among other things, whether the deceased, before that time, had had, or then had, spitting of blood or hemorrhage from the lungs, or not, or whether he then had consumption or not, and whether he had any disease. John Rasch testified that the deceased was employed in his store on the 1st day of July, 1869, and remained there for sixteen or seventeen days, when he left on account

of bad health; that during that time he had bleeding of the lungs several times very badly; that he often spit up more than a tumbler full of blood; that at one time while he was there they thought he was going to die, and he went after Dr. Ehrman and brought him to the store to see Miller; that Miller told him, after he left his employment, that he was going to get his life insured, in order to get the money on the policy; that he had been to see Dr. Sheller, and that the doctor had told him that the bleeding came from his lungs.

Dr. H. M. Harvey testified that the deceased came to his office in the early part of July, 1869, to consult him; that the deceased told him that he had had hemorrhage; that he examined him and found that he had tubercles upon one of his lungs, he did not remember which; he told the deceased that he had incipient consumption, and that he must change his employment and live more in the open air; that the deceased came to see him a second time during the same month, and told him that he had had another hemorrhage; that he told the deceased that hemorrhage was rather a favorable symptom than otherwise, because the bleeding carried away with it the foreign matter that was in his lungs; thinks he told him that there was nothing serious the matter with him, though he told him at the time that he had incipient consumption; he knew this to be so from a careful examination of his lungs, and from what the deceased told him of his hemorrhages.

John Meyer testified that when the deceased came to Rasch's store he was not sick, that he knew of, but after he had been there a little while he commenced spitting blood; saw him spitting blood at the store four or five times; saw him spitting blood shortly after he was insured; the deceased staid at Rasch's store after he was insured; sometimes worked at the books, and sometimes sold shoes.

Dr. Ehrman testified that Rasch came for him to go to see Miller; he went, and found Miller suffering from hemorrhage of the lungs, and saw him spitting blood; it came

from the lungs and in considerable quantities; does not remember the time; it was at Rasch's store; thinks it was the last spring.

Dr. Sheller testified that he was the attending physician of Miller from August 6th, 1869, to the 18th of November following; the first time he was called to see him was at the house of Christian Georges, on the 6th of August, 1869; he had a hemorrhage of the lungs; saw him spit up the blood, and knew it came from the lungs; he made a close examination of him at that time; he then had consumption, and he attended him for it up to the 18th of November, 1869; when he first saw him he told him he was in a very dangerous condition.

The defendant also gave in evidence the declaration and the particulars of himself, signed by the deceased, containing the questions 10, 11, and 12, and the answers thereto, referred to in the pleadings, and also a statement by the deceased, that he had not had any medical attendance for the last seven years previous thereto. The deceased died April 2d, 1870, of disease of the lungs.

There was other evidence for the defendant, and also evidence for the plaintiff, but it is not necessary to set it out, as it did not materially contradict that which we have stated.

We think, from the evidence, that the jury should have found that, prior to the issuing of the policy, the deceased had had spitting of blood, and that he then had consumption; that he knew he had had spitting of blood, and had sufficient reason to believe that he then had consumption.

The singular charge given by the court, to which an exception was taken, was as follows:

"The jury must treat this case just as if it was between two individuals, the corporation being entitled to precisely the same rights as though it were a natural person. In the consideration of the questions put to Miller by the company, the jury are to interpret the language used by the usual and ordinary meaning attached to the words. These questions and answers are contained in an instrument which I

hold in my hand. Now, in his declaration the party says he is twenty-two years of age. Will anybody pretend that if he had made a mistake of one day it would make the policy void? They ask him if he had ever resided abroad, and, if so, whether he was affected with any of the diseases peculiar to the climate. No ordinary man would know what diseases were peculiar to any given climate. In question number ten they ask him if he ever had since childhood a long list of complaints with hard names. In the first place how are you going to tell when childhood ended. One of the diseases mentioned is rheumatism. Nobody knows, except a physician or surgeon, what that is, and no two doctors agree about it. They tell me I have rheumatism when I know I have not. There is not one man in a thousand in this country that ever saw a case of gout. As to bronchitis, there is not one of you that knew what that disease is until I made the doctors explain it; perhaps some of you know what asthma is. Consumption is a term that we all understand to mean a disease of the lungs. Here is mentioned a disease called fistula. Most people would take that to mean such a disease as horses have, which almost always affects them about the shoulders, but I suppose they mean here what is called *fistula in ano.* Question eleven is, has the party had any sickness within the past ten years? There is no man that has not been sick sometime in his life. I am sick now. The party can only be required to answer as to sickness that was of such a character as to increase the risk upon his life beyond what it would be upon the life of a man in ordinary good health. If he had had a slight sickness at some time during the last ten years, a negative answer would not be so untrue and fraudulent as to avoid the policy. Question seventeen, in which Miller is asked for the name of his usual medical attendant, must be taken to mean a physician who has attended him in frequent sickness, and cannot be taken to mean one who has attended him only once or twice; and if he had two or three physicians to prescribe for him in oc-

casional sickness, he cannot be said to have a usual medical attendant.

" The certificate of Miller that he had had no medical attendance within the past seven years, must be construed in the same way.   It cannot be held to mean that he had not had such attendance as Harvey or Ehrman, one of whom saw him twice, and the other only once.   If Dr. Sheller attended him from the 6th day of August, 1869, constantly to the 3d day of September, 1869, frequently, not every day, but often, it would make the certificate a fraud upon the company.   In order to find that Miller was guilty of fraud upon the company in answering that he had no disease or disorder on the 3d day of September, 1869, they must find that he had such a disease or disorder as would materially increase the risk upon his life, and that he knew, or had good reason for believing that this was the case.   A man may have incipient tubercular consumption, and not be aware of it, especially if the examining surgeon of the company has examined him, and pronounced him sound.   If the jury believe that on the 3d day of September, 1869, Miller had consumption, and knew he had it, or had reason to suspect that he had it, they will have to find for the defendant.   Spitting of blood is not necessarily a disease which would materially affect the risk.   It may occur from a cold, or a blow upon the face or chest, or from inflammation of the fauces or posterior cavity of the mouth, or inflamed gums, and perhaps sundry other causes, none of which would be deemed material by the insurance company.

" In order to find that Miller was guilty of fraud, the jury must find that he knew or was advised, or had good reason to suspect, that he was in such a physical condition as to render the risk greater than in ordinary cases of men in apparent good health.   The examining physician, Dr. Walker, must be deemed an agent of the company, and that he is skilled in his profession, and, in the absence of proof to the contrary, that he discharged his duty to the company, and was likely to detect consumption or slight symptoms of it,

if it had so far progressed as to make the applicant conscious of the fact that he was diseased."

The charges asked by the defendant, and refused, are as follows:

"First. If the jury believe from the evidence that the defendant, before the execution and delivery of the policy sued on, propounded the several questions contained in the application of Herman A. Miller, a copy of which is set out in the answer, to the said Herman A. Miller, and that there is any untrue or fraudulent allegation contained in the same, made to them by the said Miller, as set up in the answer, they must find for the defendant.

"Second. The declaration and answers by the said Herman A. Miller are to be taken as warranties that the statements and answers to questions are true, and any misstatement or untrue answer which is stated in the answer of defendant will render the policy void, and you must find for the defendant; and this will be so whether you find that the misstatement or untrue answers were made fraudulently or otherwise.

"Third. The contract between the insurance company and the insured is like a contract between two individuals. If one makes false statements with reference to facts material to the settlement of the terms upon which the contract shall be made, which are exclusively within his own knowledge, and thereby induces the other to agree to terms which he might not otherwise have assented to, the party deceived cannot be held liable upon the contract.

"Fourth. If the jury believe, from the testimony, that in July, 1869, Herman A. Miller had spitting of blood, they must find for the defendant.

"Fifth. If the jury believe that Herman A. Miller falsely represented to the defendant, that he had had no medical attendance for the seven years next preceding the 3d day of September, 1869, they must find for the defendant.

"Sixth. It is not necessary for the defendant, in order to entitle her to a verdict in her favor, to show that Herman A.

Miller knew at the time of making his answers, that they were untrue, if in fact they were untrue.

"Seventh. If the jury find that on the 3d day of September, 1869, Herman A. Miller had consumption, they must find a verdict for the defendant, and it makes no difference whether he knew it or not. He may have been entirely ignorant of the fact, or may have believed that the symptoms he had did not indicate consumption; yet if, in fact, he had consumption at that time, the jury must find for the defendant.

"Eighth. If Herman A. Miller, prior to the 3d day of September, 1869, and since his childhood, had had spitting of blood, no matter from what cause, it was his duty to have stated the fact in answer to question number ten of his application, and if he failed to do so it was a fraud upon the company and renders the policy void, and the jury must find for the defendant, if, in addition to this, they find that the said Miller made the answers to the questions as averred in the defendant's answer."

We think that the policy, the declaration, and the particulars of the applicant, must be regarded as one instrument. The policy on its face refers to the declaration, and it refers to the particulars. A covenant or agreement, to become a warranty, need not appear on the face of the policy, but may be on a paper referred to in, and made a part of, the policy. *Cox* v. *The Ætna Insurance Company*, 29 Ind. 586, and authorities cited; Angell Fire and Life Insurance, sec. 151; Bliss Life Insurance, sec. 57. If the applicant had had spitting of blood prior to the time when he effected insurance on his life, we think he was bound to state the fact in the particulars of himself given by him in answer to the questions propounded to him, and that the fact that he was examined by a surgeon, employed for that purpose by the company, was no excuse for not having done so. Such questions are designed to induce a full and fair statement of the condition of the party seeking insurance; and in this case the answers must be held to be warranties on the part of the applicant that the facts were as stated by him. Whether the hemor-

rhage proceeded from one cause or another, it was material and necessary that the statement in answer to the question relating to it should have been true.

*Geach* v. *Ingall*, 14 M. & W. 95, was an action upon a policy of life insurance, and was very similar in its facts to the case under consideration. The defendant pleaded several special pleas, among them one in which he alleged that the declaration and statement of the assured was untrue, in this, that at the time of making the same, the said assured had had spitting of blood. Lord DENMAN, before whom the case was tried, instructed the jury that it was for them to say whether, at the time of making the statement, the assured had had such spitting of blood as would have a tendency to shorten life. Upon appeal and hearing before POLLOCK, C. B., and Barons ALDERSON and ROLFE, a new trial was ordered for the misdirection of the judge. POLLOCK, C. B., said: "By the expression 'spitting of blood' is, no doubt, meant the disorder so called, whether proceeding from the lungs, the stomach, or any other part of the body; still, however, one single act of spitting of blood would be suffi- cient to put the insurers on inquiry as to the cause of it, and ought, therefore, to be stated." ROLFE, B., said: "I have no doubt that, if a man had spit blood from his lungs, no matter in how small a quantity, or even had spit blood from an ulcerated sore throat, he would be bound to state it. The fact should be made known to the office, in order that their medical adviser might make inquiry into its cause."

In *Vose* v. *The Eagle Life, etc., Ins. Co.*, 6 Cush. 42, one of the questions propounded to the insured, when he applied for insurance, was, "Has the party or any of his family been afflicted with pulmonary complaints, consumption, or spitting of blood?" To which he answered in the negative; and it is said: "The usual mode of proceeding, to effect an insur- ance upon a life, is, for the party wishing to insure to procure at the office of the insurers a printed form of proposal, which is to be filled up by him. This form, in general, con- tains a large number of interrogatories, the answers to which

are to be written upon the blanks left for the purpose. This was the course of proceeding in the present case, and several of the interrogatories and answers thereto are given in the statement. This proposal or declaration, when forming a part of the policy, has been held to amount to a condition or warranty, which must be strictly true or complied with, and upon the truth of which, whether a misstatement be intentional or not, the whole instrument depends. The party effecting an insurance cannot be too cautious, therefore, in ascertaining the real state of the facts alleged in his declaration."

In that case, because the party had answered the above interrogatories untruly, judgment was given for the company.

A warranty may be of the existence or non-existence of some fact, when it is in the nature of a precedent condition; or it may be promissory, as when the insured undertakes to perform or abstain from some act in the future, when it is in the nature of a condition subsequent.

A representation differs from a warranty; for while the latter must be true, the former need only be substantially true—true so far as the representation was material to the risk. A fact is to be deemed material, if a knowlege of it would have induced the insurer to have refused the risk or to have charged a higher rate of premium for taking it.

The charge given by the court in this case need not be particularly examined. The court seems to have lost sight entirely of the distinction between a warranty and a mere representation. Had the case been tried on the issue formed on the second paragraph of the answer alone, the doctrine, with reference to the effect of misrepresentations might have been applicable. But the charge given to the jury by the court was wholly inapplicable to the issue formed by the first paragraph of the answer setting up the warranties.

Whether the case is to be regarded as one depending on the warranties, or on the misrepresentations alleged in the

second paragraph of the answer, we are clear that it was wrongly decided.

The instructions asked by the defendant, and refused by the court, being in accordance with the law as above stated, should have been given by the court, and the charge given should have been withheld; or so far as it was law, and applied to the question of representations, it should have been confined to the issue formed by the denial of the second· paragraph of the answer.

The remaining question is new. The law requires the judge, when requested by either party, to put his instructions to the jury in writing. Here the counsel for the plaintiff openly requested the court to put the charge in writing, and afterward, when it was too late, as is contended, for the defendant to make such a request, the demand of the plaintiff for written instructions was withdrawn. It is insisted that this is cause for reversal of the judgment. We do not think so. It does not appear that any oral instructions were given by the court, or that the defendant was in any way injured by the course pursued. The court might, without doubt, have taken the necessary time, if the request had been made, to prepare instructions in writing, but no such request was made.

The defendant had the same right to ask for, and insist upon, written instructions, that the plaintiff had, and if it wished to make sure of such charges, should have preferred its own request, and not depended on its adversary.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.

*B. Hynes*, for appellant.

*C. Denby* and *D. B. Kumler*, for appellee.