EBNER, ADMINISTRATOR, *v.* OHIO STATE LIFE INSURANCE COMPANY.

[No. 10,074. Filed December 18, 1918.]

1. INSURANCE.—*Life Insurance.—Incontestability Clause.—Beginning of Period.—Statute.*—As §4622a Burns 1914, Acts 1909 p. 251, provides that no policy of life insurance shall be issued unless it stipulates that it shall be incontestable not more than two years from date, except for the nonpayment of premiums, etc., a provision in a life policy limiting the insured's right to contest to one year must be construed in the light of the statute and the time computed from the date of the policy. p. 41.

2. INSURANCE.—*Policy.—Construction.*—Contracts of insurance are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary and popular sense. p. 46.

3. STATUTES.—*Construction.*—Statutes are to be construed according to the sense and meaning of the terms used, and, where clear

and unambiguous, such terms are to be taken and understood in their plain, ordinary and popular sense. p. 46.

4. INSURANCE.—*Life Insurance.—Stipulations Required by Statute.—Construction.*—A stipulation in a life insurance policy, even though prescribed by statute, derives its force from the consent of the parties, and should be construed as a contract, rather than a statutory provision, but its origin should be kept in view. p. 47.

5. INSURANCE.—*Life Insurance.—Incontestability Clause.—Limitation of Action.*—Where a life policy provides that it shall be incontestable after one year, a contest of the policy must be commenced within the year, regardless of when the policy matures or the death of the insured occurs. p. 47.

6. INSURANCE.—*Life Insurance.—Avoidance of Policy.—Insurer's Right to Affirmative Action.—Incontestability Clause.*—Under proper circumstances, a life insurance company may proceed by affirmative action, after the death of the insured, to avoid the policy for misrepresentation, provided it takes proper steps to that end within the period named in the incontestability clause, the remedy by defending an action on the policy being inadequate. p. 50.

7. INSURANCE.—*Life Insurance.—Time for Contesting Policy.—Incontestability Clause.*—Where an insurer brought an action to cancel a life policy after insured's death, the complaint alleging, as grounds of recourse to equity, that insured's administrator intended to delay action on the policy for the purpose of depriving the insurer of its defense by reason of a clause making the policy incontestable after one year, and defendant filed a demurrer, which was sustained, and cross-complaint on the policy after the time for contest had expired, and the insurer continued its contest by repeating in several paragraphs of answer to the cross-complaint the substance of the complaint, the incontestability clause did not bar the insurer from making its defense. p. 51.

8. INSURANCE.—*Life Insurance.—Action to Contest Policy.—Diligence.*—Where a policy of life insurance, dated May 20, 1914, contained a clause making it incontestable after one year, and, though insured died November 23, 1914, proofs of death were not filed until January 2, 1915, whereupon, by reason of information derived from the proofs, the insurer immediately commenced an investigation of certain statements made by insured in his application, and on January 16 notified insured's administrator of its election to rescind on the ground of misrepresentations by insured, tendering the amount of premiums paid, with interest, and two days before the expiration of the period of contest under the incontestability clause brought an action to cancel

the policy, the insurer exercised a proper degree of diligence. p. 52.

9. INSURANCE.—*Life Insurance.—Stipulations as to Health at Time of Delivery.—Validity.*—Stipulations and conditions in applications and policies of life insurance that a policy shall not take effect or be binding on the company unless delivered to the insured while he is in good health, or the like, are valid, being in the nature of conditions precedent to the policy becoming effectual. p. 53.

10. INSURANCE.—*Life Insurance.—Representations in Application.*—An applicant for life insurance, knowing that he had shortly before made application for insurance in another company, was bound to know that such application had either been rejected or was pending. p. 54.

11. INSURANCE.—*Life Insurance.—Representations in Application.*—Representations in an application for life insurance that applicant had never made an application to any company for life insurance on which a policy of the exact kind applied for had not been issued, and that there was no such application then pending, that he never had had any disease of the heart, and that no physician had within the last ten years expressed an unfavorable opinion concerning his health, were material to the risk. p. 55.

12. INSURANCE.—*Life Insurance.—Avoidance of Policy.—Misrepresensations.*—A material false representation is a ground for the avoidance of an insurance policy, the same as any other contract. p. 55.

13. INSURANCE.—*Misrepresentations.—Nature.* — A misrepresentation, as that term is used in its relation to insurance policies, is the statement of something as a fact which is untrue in fact and which the assured states, knowing it to be untrue, with an intent to deceive the underwriter, or which he states positively to be true, without knowing it as true, and which has a tendency to mislead, such fact in either case being material to the risk. p. 55.

14. INSURANCE.—*Life Insurance.—Misrepresentations.—Effect.*—A misrepresentation of a fact material to the risk in an application for a policy of life insurance has the force and effect of a positive fraud. p. 56.

15. INSURANCE.—*Life Insurance.—Avoidance of Policy.—Representations.*—A representation that is substantially true is not a sufficient ground for the avoidance of a life insurance policy. p. 56.

16. APPEAL.—*Matters Reviewable.—Sufficiency of Evidence.—Failure to Incorporate Evidence in Record.*—The sufficiency of the evidence or other questions involving it cannot be determined on appeal where the evidence is not properly in the record. p. 56.

17. APPEAL.—*Record.—Bill of Exceptions.*—In the absence of an

order-book entry showing that the bill of exceptions containing the evidence as settled and signed by the judge was filed, the bill is not properly in the record, although there is a clerk's certificate, preceding his general certificate, reciting that the longhand transcript of the evidence as taken down, reported, transcribed and certified by the official court reporter was filed with, and in the office of, the clerk. p. 57.

From Pike Circuit Court; *John L. Bretz,* Judge.

Action by the Ohio State Life Insurance Company against Lawrence A. Ebner, administrator of the estate of Jacob L. Ebner, deceased. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*L. E. Ritchey, Gardiner, Tharp & Gardiner* and *Richardson & Taylor,* for appellant.

*U. S. Brandt, Orr & Clark, W. H. Hill* and *W. D. Curll,* for appellee.

CALDWELL, J.—The special finding of facts is in part to the following effect: On May 20, 1914, Joseph L. Ebner, appellant's decedent, of Vincennes, Indiana, executed to appellee his written application for a life insurance policy on his own life in the sum of $5,000. On May 29, appellee issued such a policy on the application, and delivered it to decedent on June 1, 1914. Attached to the policy there was a copy of the application. The former provided that it and the latter should constitute the entire contract between the parties. The application was in two parts. The first part contained certain statements and agreements on the part of decedent and certain information imparted by means of answers to questions contained in the application. Such statements and agreements were in part to the following effect: "That the policy shall not be binding on the company unless it has been delivered to me during my good health;"

that all statements and answers contained in the entire application were declared to be true and complete; that no material facts had been suppressed, and that such statements and answers were offered to the company as a consideration for issuing the policy. The information imparted in answering questions contained in the first part of the application was in part substantially as follows: That no physician within ten years prior to the signing of the application had, to decedent's knowledge, expressed an unfavorable opinion concerning his health.

Part two of the application consisted of questions propounded by appellee's medical examiner and decedent's answers thereto, the information thus imparted being in part to the following effect: That decedent had never made an application to any company for insurance on his life, on which a policy of the exact kind applied for had not been issued, and that there was no such application then pending; that decedent did not at the time have, and that he had not ever had, any one of certain diseases, among them diseases of the heart and kidneys; that decedent did not have any regular physician. This part of the application contained also decedent's declaration that to the best of his knowledge and belief "I am in sound physical condition and a proper subject for life insurance."

The policy, under the heading "Incontestability," contained the following provision:

"1. After one year this policy shall be incontestable except for nonpayment of premiums * * *. All statements made by the insured in the application shall, in the absence of fraud, be deemed representations and not warranties."

On May 2, 1914, decedent applied in writing to the Michigan Mutual Life Insurance Company for a $20,000 policy on his own life. On May 12, 1914, an examination having disclosed the presence of albumen and granular and hyaline casts in his urine, that company rejected his application and refused to issue and did not issue a policy thereon. At the time of making application in the case at bar decedent knew that no policy had been issued on his application to the Michigan company, and from information imparted to him by the agent of such company a day or two before May 20, 1914, he knew that there was some trouble connected with such application, and that there was difficulty in getting it accepted. On May 20, 1914, Dr. Beard of Vincennes was, and for more than six months prior thereto had been, decedent's medical attendant. Between November 2, 1913, and May 20, 1914, decedent consulted Dr. Beard many times at intervals varying from twice a week to twice a month, by reason of shortness of breath on exertion and the existence of a disease of the heart known as mitral regurgitation or a leaky heart valve, with which he was affected and afflicted. On November 6, 1913, he consulted Dr. Jameson of Indianapolis. In November, 1913, decedent was informed that Drs. Beard and Jameson had discovered that he was affected with a disease of the heart and that he had a leaky valve of the heart. Dr. Beard informed him of the existence of such disease on several occasions, and at all times after November 5, 1913, he knew that he was affected with a disease of the heart. On November 2, 1913, such heart disease had permanently impaired decedent's health and had developed to the extent that it was incurable, and from and after such

time and until his death Dr. Beard treated and pre-
scribed for decedent for such disease of the heart.
Decedent never recovered from such disease of the
heart or from shortness of breath on exertion. He
died on November 23, 1914. His death was caused by
said disease of the heart known as mitral regurgita-
tion or a leaky heart valve. At the time of the deliv-
ery of said policy to decedent he was not in good
health; at that time his health was permanently im-
paired by said disease and to the extent that he was
incurable and his longevity shortened.

Appellee had no knowledge of or information con-
cerning decedent at the time of the delivery of the
policy to him other than as disclosed by the applica-
tion. Decedent's statements contained in the appli-
cation were made for the purpose of inducing appellee
to issue to him the policy applied for, and in issuing
such policy appellee relied on such statements, and,
so relying, issued it in consideration of such state-
ments and the annual premium provided for by the
policy. Appellee had no notice or knowledge prior
to the filing of proofs of death that decedent had
consulted physicians as above set out, or of any fact
connected therewith, or that decedent had had short-
ness of breath or that he was afflicted with any dis-
ease of the heart, or that his probable longevity was
shortened by any ailment. Had appellee known the
facts as to decedent's diseased condition or respect-
ing his medical consultations and treatment, it would
not have issued the policy.

Appellant filed proper proofs of death on January
2, 1915. Thereupon appellee instituted an investiga-
tion based on facts revealed by such proofs, which
investigation was completed on January 15, 1915.

The facts as found respecting decedent's physical condition, etc., were discovered by appellee as a result of such investigation, and not until the completion thereof. Thereupon, by reason of decedent's false statements contained in his application and because it was determined that decedent was not in good health when the policy was delivered, appellee elected to rescind it, and thereupon on January 16, 1915, notified appellant of such election, made a proper tender of the amount of premium that had been paid, with interest, totaling $255.81, and demanded the cancellation of the policy. Appellant refused to accept the money tendered or to permit the policy to be canceled. Proper steps were taken to keep the tender good. On May 18, 1915, appellee filed its complaint in the Knox Circuit Court against appellant, seeking the cancellation of the policy.

On the finding the court stated conclusions of law in appellee's favor, but that the sum so tendered, held by the clerk of court, should be paid to appellant.

There are further facts disclosed by the record, in substance, as follows: Appellee's complaint to cancel was in four paragraphs. By its allegations the right to procure the cancellation of the policy was grounded on the false statements and concealments as indicated by the finding. Each paragraph embodied the stipulation that "after one year this policy shall be incontestable," and contained allegations to the effect that it was appellant's intention to delay action on the policy until more than one year from its date, his purpose being to deprive appellee of its defense by appealing to such incontestability clause. On September 16, 1915, appellant filed a demurrer to the complaint and filed also a cross-com-

plaint on the policy. On October 8, 1915, the demurrer to the complaint was sustained. On November 2, 1915, appellee answered the cross-complaint in eight paragraphs, the first being a general denial, the others special paragraphs, very similar in allegation to the respective paragraphs of the complaint, being based on the false statements and concealments as found, together with the provisions of the policy thereby invoked and alleged to have been violated. There were proper allegations also on the subject of rescission and tendering the amount of the premium collected. Demurrers to the answers having been overruled, appellant replied by a general denial. The venue having been changed to the Pike Circuit Court, a trial was had on the issues joined on the cross-complaint, resulting as above indicated.

Error is assigned to the overruling of the demurrers filed to the answers to the cross-complaint, and also on exceptions reversed to each conclusion of law stated on the finding.

Proceeding to a consideration of the case in its general features, we are first required to construe the incontestability provision of the policy, which for purposes of this case is as follows: "After one year this policy shall be incontestable * * *." There were certain exceptions which need not be further noticed, as they are not applicable here.

It is appellee's contention that this provision should be construed to mean that a policy containing it is noncontestable after one year, provided it continues in force for that length of time, or provided it does not mature by the death of the insured before the expiration of the year; that, where the insured dies within the year, the provision has no application.

Appellant, however, contends that, regardless of when the policy matures or the death of the insured occurs, a contest of the policy must be commenced within the year, or it is forever barred; that after the decease of the insured, the insurer may not contest the policy by any affirmative action, but only by a defense to a proceeding brought to enforce it; that, as a consequence, where the insured dies within the year, the insurer may not thereafter begin a contest of the policy at all, unless, within the year, the representative of the insured or his beneficiary brings an action on it to enforce it, in which case the insurer may within the year, but not thereafter, commence a contest by defending against such action; that a contest seasonably and properly commenced, however, may be continued after the expiration of the year.

It is apparent that the construction for which appellee contends requires that there be read into the provision something which it does not in terms contain. Had it been the purpose of the author of the provision, or the intent of the parties to the contract in assenting to it, to stipulate that appellee's right to contest should be limited to a period of one year, only in case the policy continued in force for that length of time or longer, it would seem that apt language to that effect might have been employed.

The courts are not in harmony respecting the beginning of the period limited by the noncontestable clause of an insurance policy, where the beginning date is not definitely stated or fixed. Some courts hold that such periods must be computed from the date of the policy; others, from the date of delivery and acceptance, where different from

the date which the policy bears. See cases collected in notes to *Meridian Life Ins. Co.* v. *Milam*, L. R. A. 1917B 103, and *Gans v. Aetna Life Ins. Co.*, L. R. A. 1915F 703. The controversy is unimportant here, as decedent died within the year measured by either rule of computation. However, since this provision was inserted in the policy in compliance with the requirements of a statute, it, should be construed in the light of the statute, and time computed from the date of the policy. §4622a Burns 1914, Acts 1909 p. 251, §5.

Returning to the question under consideration, the decided cases bearing on it are few in number. *Mutual Life Ins.* Co. v. *Kelly* (1902), 114 Fed. 268, 52 C. C. A. 154, is scarcely in point here. There the policy contained a stipulation to the effect that, if it matured by the death of the insured after two years, the payment of the amount of the policy would not be disputed. The insured died within the two-year period. It was held that the stipulation carried the reasonable implication that if the policy matured by the death of the insured within the two years, the payment of the sum insured might be disputed by reason of the breach of any of the conditions on which liability depended. It is evident that the Kelly case is not in point here, since there noncontestability was predicated in terms on the policy maturing by the death of the insured after the expiration of two years. The policy there contained no provision on the subject of the time within which a disposition to contest must be indicated by some overt or affirmative act.

In *Mutual Reserve, etc., Assn.* v. *Payne* (1895), (Tex. Civ. App.) 32 S. W. 1063, the policy contained a provision to the effect that, if it should be in continuous force until five years from its date, it should

thereafter be incontestable, except for the breach of certain conditions not involved in the decision. The policy contained a provision also that death by suicide was a risk not assumed. The insured committed suicide after the expiration of the five-year period. The court, in holding that a contest could not be grounded on the fact that the insured died by his own act, said in substance that, had such event occurred within the five-year period, that fact would have constituted a defense. Even if the voluntary statement of the court should be assigned weight as a decision, it is apparent that the case has little bearing here. There the policy provision in terms dealt with the question of what lapse of time during which the policy continued in force would defeat a contest thereafter instituted, rather than with the question of when or within what time the right to contest must be asserted by some sufficient affirmative act or defense.

The case closest in point here is *Monahan* v. *Metropolitan Life Ins. Co.* (1913), decided by the Appellate Court of Illinois, as reported in 180 Ill. App. 390, and subsequently decided by the Supreme Court of that state, as reported in (1918), 283 Ill. 136, 119 N. E. 68, L. R. A. 1918D 1196. The decision of the Appellate Court is indicated by the following quoted from the opinion: "As the insured died within two years after the date of the policy, the incontestable clause which provides that 'after two years this policy shall be noncontestable except for the nonpayment of premiums as stipulated, or for fraud,' did not become operative. The only reasonable construction of which this clause is susceptible is that after the policy shall have been in force two years, or if the insured shall

survive two years after the date of the policy, it shall be noncontestable, etc." The Supreme Court in affirming the decision of the Appellate Court differed from it in construing the involved clause. The decision of the former on that question is indicated by the following quoted from the opinion: "In case of a breach of warranty under this particular clause the insurer must assert its claim within the two-year period, whether the insured survives that period or not, either by affirmative action or by defense to a suit brought on the policy by the beneficiary within the two years." It appeared in that case that the provision of the policy under consideration was in language chosen by the insurance company. By reason of this fact, the court applied the rule that the language of an insurance policy, when uncertain or ambiguous, should be construed most strongly against the insurer, the court saying, however, that: "As the policy was issued before the passage of the act regulating conditions and provisions of life insurance policies, the question whether a different rule of construction applies where a statute requires the insertion of specific language in a policy is not presented." The author of an editorial note following the decision as reported in L. R. A. 1918D, at page 1196, says in such note, at page 1198, and with reference to the conclusion of the court: "In view of the phraseology used, and the rule requiring a strict construction against the insurer, the decision of the Supreme Court seems justified." By "phraseology used" the editor of such note refers to the fact that the policy provided that "after two years," rather than that "after it had been in continuous force for two years," it should be incontestable. The court

last named gave weight to that fact also. For purposes of this case, the phraseology of the provision involved in the Illinois decision is practically identical with that involved here.

Language used by the Court of Appeals of the District of Columbia in *Prudential Ins. Co. v. Lear* (1908), 31 App. Cas. D. C. 184, seems to be in harmony with the decision of the Supreme Court of Illinois as above. The contract there provided " 'that the policy shall be incontestable one year after its date if all due premiums shall have been paid.' " The court there said: "This provision leads itself to the interpretation that the company intended to fix a time limit of one year within which it might ascertain whether an application had been made fraudulently to obtain a policy; and that if, at the expiration of one year, no evidence to that effect had been obtained, the company waived any further right to interpose such a defense."

The provision here, however, as we have said, was inserted in obedience to a statute. Section 4622a Burns 1914, *supra,* provides in part: "From and after July 1, 1909, no policy of life insurance shall be issued or delivered in this state    *    *    *    unless the same shall provide the following:    *    *    *    (3) That the policy    *    *    *    shall be incontestable after not more than two years from its date, except for non-payment of premiums," etc.

. The rule of strict construction as applied against insurance companies is usually grounded on the fact that the forms of policies are prepared by them and on the consequent presumption indulged to some extent that primarily they have their own interest in view in selecting the particular language used. It

is apparent that in case of a stipulation inserted in a policy by command of a statute the reason back of the rule largely fails. For conflicting views on the subject of what rule of construction should be applied in case of such a stipulation or where the form of policy is prescribed by statute, see the following: *Mick* v. *Corporation, etc.* (1914), 87 N. J. Law 607, 91 Atl. 102, 52 L. R. A. (N. S.) 1074; *Matthews* v. *American Central Ins. Co.* (1897), 154 N. Y. 449, 48 N. E. 751, 39 L. R. A. 433, 61 Am. St. 627; 14 R. C. L. 932.

As the provision here was inserted pursuant to legislative enactment, it should not be presumed that back of it there was a purpose to give to either 2. party an advantage over the other, but rather an intent to stipulate what was fair between them. As a practical proposition it can scarcely be said that such provision results in favor of one party to the exclusion of the other. Such a provision favors the insured as it affords him a sense of security after the lapse of a limited time. It results in benefit to the insurer, as it enables him to point to it as a means of increasing the volume of business. That the insurer here so regarded it is indicated by the fact that the stipulated time is shorter than required by the statute. While, in case of a specific stipulation inserted in an insurance policy by command of statute, we doubt the applicability of the rule of strict construction against the insurer, at any event it is a rule of universal application that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and 3. unambiguous, their terms are to be taken and understood in their plain, ordinary and popu-

lar sense. .14 R. C. L. 931, and cases. The same rule is applicable in the construction of statutes. 36 Cyc 1114.

The stipulation here, while prescribed by statute, derived its force from the consent of the parties to it as a part of a contract, and hence it should be construed as a contract, rather than a statutory provision, its origin, however, being kept in view. *Dunton* v. *Westchester Fire Ins. Co.* (1908), 104 Maine 372, 71 Atl. 1037, 20 L. R. A. (N. S.) 1058.

Viewing the question from all sides, it is our judgment that the provision under consideration must be construed in harmony with appellant's contention; that the language used is not so ambiguous as to call for the insertion of modifying or limiting clauses in order that its meaning may be determined; that by virtue of such provision time is afforded the insurer within which to conduct the necessary investigation to determine the existence of any fact upon which the invalidity or nonbinding force of the policy may be predicated. It does not follow, however, that we concur in appellant's views respecting the rights of the parties under such a construction, but rather that if, as a result of such investigation or of knowledge otherwise obtained, the insurer desires to contest the policy, appropriate steps to that end, either by a defense to an action brought on the policy in case of the death of the insured, or by proper affirmative action, must be taken within the year; otherwise that the policy becomes incontestable, save as to conditions excepted from the noncontestable clause. Such a construction is in harmony with the language of the stipulation, and does

not necessitate the interpolation of words, phrases or clauses not found therein.

The Supreme Court of this state, in a case where it is true the facts were somewhat different from those presented here, said of such a provision: "The incontestable clause is construed by us to be binding upon the appellant and to mean just what it says, that 'after one year from the date of issue, this policy *shall* be incontestable if the premiums have been duly paid'." *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind. 9, 101 N. E. 289, 45 L. R. A. (N. S.) 192.

We are confirmed in such view by the fact that the courts frequently speak of such a stipulation as a short statute of limitations in favor of the insured, specifying a limited period within which the insurer must, if ever, test the validity of the policy. *Commercial Life Ins. Co.* v. *McGinnis* (1912), 50 Ind. App. 630, 97 N. E. 1018; *Clement* v. *Insurance Co.* (1898), 101 Tenn. 22, 46 S. W. 561, 42 L. R. A. 247, 70 Am. St. 650; *Dibble* v. *Reliance Life Ins. Co.* (1915), 170 Cal. 199, 149 Pac. 171, Ann. Cas. 1917E 34; *People* v. *Alexander* (1918), 171 N. Y. Supp. 881; *Trust Co.* v. *Ins. Co.* (1917), 173 N. C. 558, 92 S. E. 706; *Wright* v. *Mutual, etc., Assn.* (1890), 118 N. Y. 237, 23 N. E. 186, 6 L. R. A. 731, 16 Am. St. 749.

Statutes of limitation deal with the question of when, after their accrual, rights must be asserted.

We proceed to the second question presented by the assignment of errors; that is, how or in what form of action or proceeding must the insurer contest the policy within the year? It will be remembered that the policy here was dated May 20, issued May 29, and delivered June 1, 1914. The insured died Novem-

ber 23, 1914. Proofs of death were filed January 2, 1915. Appellee, by reason of information derived from such proofs, at once commenced an investigation with reference to statements made by the insured contained in the application. The investigation was completed January 15, 1915. Appellee at once took steps to rescind the policy as hereinbefore stated, and on May 18, 1915, within the year, commenced an action to cancel the policy. In the meantime appellant had taken no steps to collect the amount due on the policy, if valid. On September 16, 1915, some time after the expiration of the year, appellant filed a demurrer to the complaint, and also a cross-complaint on the policy. The demurrer to the complaint having been sustained, appellee continued its contest of the policy by repeating in the various paragraphs of answer to the cross-complaint the substance of the allegations of the respective paragraphs of complaint.

It is appellant's contention that the rescission of the policy and the bringing of an action to cancel it was not sufficient to amount to a contest of the policy, for the reason, as appellant contends, that after the decease of the insured the insurer may not proceed in equity to be relieved of the policy; that in any such case he has an adequate remedy by defending against an action at law brought on the policy, and that as a consequence a court of equity has no jurisdiction to entertain a suit to cancel the policy or any proceeding directed to a like end. Hence, appellant argues that, as appellee's suit to cancel was of necessity void of results, no sufficient steps to cancel the policy were taken until the filing of the answers to the cross-complaint, which was after the expiration of the year, and therefore prohibited by the policy.

It is perhaps true that the general rule as established by the weight of authority is in harmony with appellant's contention under the circumstances indicated. That the authorities are not in entire accord, however, see the following: 4 R. C. L. 490, and cases; 9 C. J. 1162, 1172, 1173, and cases; *Sailors* v. *Woelfle* (1907), 118 Tenn. 755, 102 S. W. 1109, 12 L. R. A. (N. S.) 881, and note; *Cable* v. *U. S. Life Ins. Co.* (1903), 191 U. S. 288, 24 Sup. Ct. 74, 48 L. Ed. 188; *Insurance Co.* v. *Bailey* (1871), 13 Wall. 616, 20 L. Ed. 501; *John Hancock, etc., Ins. Co.* v. *Dick* (1897), 114 Mich. 337, 72 N. W. 179, 43 L. R. A. 566; *Bryan* v. *Blythe* (1836), 4 Blackf. 249; *Hardy* v. *Brier.* (1883), 91 Ind. 91.

It is universally held, however, that recourse to equity may be had where the remedy at law is inadequate and does not afford the complaining party the relief to which he is entitled. Thus, in case of an insurance policy where the loss has occurred, none of the authorities deny, and many of them recognize that there may be special circumstances by reason of the existence of which the remedy at law by defending a suit brought on the policy is inadequate, and that as a consequence equity will assume jurisdiction. See the following: *Bankers, etc., Co.* v. *Omberson* (1913), 123 Minn. 285, 143 N. W. 735, 48 L. R. A. (N. S.) 265; *Globe, etc., Ins. Co.* v. *Reals* (1879), 79 N. Y. 202; *Riggs* v. *Union Life Ins. Co.* (1904), 129 Fed. 207, 63 C. C. A. 365; *Sailors* v. *Woelfle, supra;* 4 R. C. L. 490; 9 C. J. 1173.

We conclude that under proper circumstances an insurance company, after the loss has occurred, may proceed by affirmative action to avoid the policy, provided it takes proper steps to that end within the period named in the incontestability.

clause. *Trust Co.* v. *Ins. Co., supra,* reviews the decided cases to the effect that by "affirmative action," as used in such connection, is meant the bringing of a proper action within such period. See, also, *Mutual Life Ins. Co.* v. *Buford* (1916), (Okl.) 160 Pac. 928.

The special finding here is to the effect that appellee, as a result of an investigation completed January 16, 1915, discovered the falsity of certain answers and statements made by the insured as set out in the finding, and that he was not in good health at the time of the delivery of the policy; that thereupon appellee, by reason of the facts, elected to rescind the policy, so notified appellant, tendered the premiums, and kept the tender good; that two days before the expiration of the period named in the incontestability clause it commenced this action. A cross-complaint having been subsequently filed, it predicated its answers thereto on the facts that were the basis of its election to rescind. The complaint alleged as grounds for recourse to equity the fact of the incontestability provision and that appellant intended to delay action on the policy for the purpose of depriving appellee of its defense. It would seem that such fact was sufficient to invoke the jurisdiction of equity. We conclude that it sufficiently appears that within the year appellee proceeded by affirmative action to contest the policy, and that such contest was continued thereafter without interruption until its final conclusion in the trial court. It follows that under the circumstances here the incontestability clause did not bar appellee from making its defense.

It is argued, however, that appellee did not within

a reasonable time take steps to avoid the policy. It occurs to us, however, that appellee proceeded 8. with greater diligence to avoid the policy than appellant did to enforce it. Among other facts it will be remembered that, while the insured died on November 23, 1914, proofs of death were not filed until January 2, 1915; that the nature of such proofs was such as to awaken doubt in appellee's mind respecting the truth of certain representations contained in the application; that appellee at once instituted an investigation, the scope of which is outlined by the finding; that such investigation being completed in about two weeks, the facts being then and not till then ascertained, appellee proceeded promptly to take steps to rescind. It appears that appellee exercised the proper degree of diligence.

We proceed to the question of the validity of the policy under the finding: The policy contained a stipulation that the application, a copy of which was indorsed on the policy, constituted a part of the contract of insurance. The application contained a declaration and agreement on the part of the insured "that the policy shall not be binding on the company unless it has been delivered to me during my good health." The facts bearing on the state of the insured's health at the time of the delivery of the policy, and related questions, as found by the court, are substantially as follows: On November 2, 1913, insured was the victim of a certain ailment of the heart known as mitral regurgitation, or a leaky heart valve, which ailment at that time had permanently impaired his health, and had developed to the extent that it was incurable. He did not recover from such disease, but as a result thereof died on November 23, 1914.

In November, 1913, and frequently thereafter, he was informed of the existence and nature of such malady by physicians whom he consulted and who treated him. At all times after November 5, 1913, he knew that he was affected with heart disease. At the time of the delivery of the policy to him he was not in good health, and at that time his health was permanently impaired by the said disease with which he was affected, and to the extent that he was incurable and his longevity shortened, of which facts appellee had no notice or knowledge until after the filing of the proofs of death.

Stipulations and conditions in applications and policies of life insurance, like the one under consideration, that the policy shall not take effect or be binding on the company unless delivered to the insured while he is in good health or the like, are valid. They are regarded as in the nature of conditions precedent to the policy becoming effectual. The finding here does not disclose the existence of some mere temporary ailment or indisposition not related to the permanent health of the insured, but rather a serious and incurable malady of such a nature as to shorten life, and which, antedating the policy, continued without interruption until its delivery, and thereafter until it terminated in death after a few months. There is no question of waiver or estoppel here. The facts show the existence of such a condition and such a breach thereof as rendered the policy voidable at the election of the insurer. The facts disclose also that proper steps were taken to avoid the policy. See the following: *Metropolitan Life Ins. Co.* v. *Willis* (1906), 37 Ind. App. 48, 76 N. E. 560; *Metropolitan Life Ins. Co.* v. *Solomito* (1916),

184 Ind. 722, 112 N. E. 521; *Benson* v. *Metropolitan Life Ins. Co.* (1912), 161 Mo. App. 480, 144 S. W. 122; *American Bankers' Ins. Co.* v. *Thomas* (1916), 53 Okl. 11, 154 Pac. 44; *Murphy* v. *Metropolitan Life Ins. Co.* (1908), 106 Minn. 112, 118 N. W. 355; *Thompson* v. *Travelers Ins. Co.* (1904), 13 N. D. 444, 101 N. W. 900; *Wilson* v. *Interstate, etc., Acc. Assn.* (1913), 160 Iowa 184, 140 N. W. 860; *Roe* v. *Nat. Life Ins. Assn.*, 17 L. R. A. (N. S.) 1144, note; *Connecticut, etc., Ins. Co.* v. *Mullen*, 43 L. R. A. (N. S.) 725, note; *Sovereign Camp* v. *Jackson*, L. R. A. 1916F 171, note; 14 R. C. L. 900.

We proceed to a consideration of the statements made by the insured, as disclosed by the application, in the nature of declarations and in response 10. to questions, the facts respecting which, as found by the court, we have set out above. Thus, as to his having applied for other insurance. The facts respecting the application to the Michigan company occurred such a short time before the application here that it would be unreasonable to assume that he did not know of them or have them in mind. He was a party to that transaction. The court expressly found that at the time of making application here he knew that no policy had been issued on his application to the Michigan company. Such fact rendered his answer false. Knowing that he had made the application, he was bound to know that it had either been rejected or that it was pending, and, if pending, his answer was likewise false.

The finding discloses also that his answer that no physician had within the last ten years expressed an unfavorable opinion concerning his health was untrue, and likewise his answer that he did not have

at the time of the application, and that he never had had, any disease of the heart.

Under a provision embodied in the incontestability clause as above set out, the statements now under consideration should be dealt with as representations rather than warranties. Their nature is such that they should be regarded as material to the risk. It is so held. *Germania Life Ins. Co.* v. *Lunkenheimer* (1891), 127 Ind. 536, 26 N. E. 1082; *Alden* v. *Knights, etc.* (1904), 178 N. Y. 535, 71 N. E. 104; *Mutual Life Ins. Co.* v. *Dibrell* (1916), 137 Tenn. 528, 194 S. W. 581, L. R. A. 1917E 554; *Security, etc., Ins. Co.* v. *Webb* (1901), 106 Fed. 808, 45 C. C. A. 648, 55 L. R. A. 122, and note.

They must be so regarded also under the provision of the policy to the effect that such statements were presented to the company as a consideration for its issuance, and also of the finding to the effect that the insured made such statements for the purpose of inducing appellee to issue the policy, and that in issuing the policy it relied on such statements, and that but for the same it would not have issued the policy.

We then have a case of representations, false in fact and material to the risk. A material false representation is a ground for the avoidance of an insurance policy the same as any other contract. 14 R. C. L. 1021.

Such a representation may be designated as a misrepresentation. A misrepresentation, as that term is used in its relation to insurance policies, is the statement of something as a fact which is untrue in fact, and which the assured states, knowing it to be untrue, with an intent to deceive the underwriter, or which he states positively as true,

without knowing it to be true, and which has a tendency to mislead, such fact in either case being material to the risk. *Daniels* v. *Hudson River Fire Ins. Co.* (1853), 66 Mass. (12 Cush.) 416; *Clark v. Union, etc., Ins. Co.* (1860), 40 N. H. 333, 77 Am. Dec. 721; 14 R. C. L. 1021.

Such a misrepresentation has the force and effect of a positive fraud. *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62; *Krewson* v. *Cloud* (1873), 45 Ind. 273; *Bethell* v. *Bethell* (1884), 92 Ind. 318; *West* v. *Wright* (1884), 98 Ind. 335; *Gatling* v. *Newell* (1857), 9 Ind. 572; *New v. Jackson* (1912), 50 Ind. App. 120, 95 N. E. 328; *Wheatcraft* v. *Myers* (1914), 57 Ind. App. 371, 107 N. E. 81.

A representation that is substantially true is not sufficient as grounds for the avoidance of an insurance policy. *Merchants, etc., Ins. Co.* v. *Richardson* (1918), 66 Ind. App. 567, 118 N. E. 576; *Prudential Life Ins. Co.* v. *Sellers* (1913), 54 Ind. App. 326, 102 N. E. 894; *Mutual, etc., Ins. Co.* v. *Miller* (1872), 39 Ind. 475.

It cannot be said, however, that the representations here, in their relation to the materiality of the risk, were substantially true. We conclude that the court did not err in the rulings on the demurrers to the answers or in the conclusions of law. *Masonic Life Assn., etc.* v. *Robinson* (1912), 149 Ky. 80, 147 S. W. 882, 41 L. R. A. (N. S.) 505; *Mutual Life Ins. Co.* v. *Dibrell, supra; Alden* v. *Knights, etc., supra; Security, etc., Ins. Co.* v. *Webb, supra;* 25 Cyc 819.

We are asked to consider the sufficiency of the evidence. We cannot do so or determine any other question involving it. It is not before us. The bill of exceptions containing the evidence is not properly in the record. It may be said also in

this connection that it is only by the exercise of extreme liberality that it may be held that any of the pleadings are in the record. As to the bill of exceptions there is no order-book entry showing that it was filed. There is a clerk's certificate preceding his general certificate to the effect that the longhand transcript of the evidence as taken down, reported, transcribed and certified by the official court reporter, was filed with, and in the office of, the clerk, but there is no statement that the bill as settled and signed by the judge was so filed. Under such circumstances the bill is not properly in the record. *Black* v. *State* (1908), 171 Ind. 294, 86 N. E. 72; *Hoffman* v. *Isler* (1912), 49 Ind. App. 284, 97 N. E. 188; *Fairbanks* v. *Warrum* (1913), 56 Ind. App. 337, 104 N. E. 983, 1141; *Huffman* v. *Thompson* (1912), 177 Ind. 366, 98 N. E. 113; *Marks* v. *Mariotte* (1912), 51 Ind. App. 281, 99 N. E. 501; *Rector* v. *Druley* (1909), 172 Ind. 332, 88 N. E. 602.

Judgment affirmed.