## NEW YORK LIFE INSURANCE COMPANY
### v. KUHLENSCHMIDT.

[No. 26,964. Filed December 17, 1937. Rehearing denied January 18, 1938.]

*Louis H. Cooke, Daniel H. Ortmeyer,* and *Gavin & Gavin,* for appellant.

*John W. Spencer, Wilbur C. Clippinger,* and *William F. Little,* for appellee.

FANSLER, J.—This is an action by appellee, the sole beneficiary of a life insurance policy issued by appellant upon the life of appellee's husband. Appellant sought to avoid liability on the ground that the insured had made false and fraudulent statements as to his health, and as to consultations with doctors concerning ailments and diseases, in his application for the insurance; and, by cross-complaint, prayed the cancellation of the policy on the ground of fraud, based upon the false statements in his application. The cause was tried by the court without a jury. There were special findings of fact and conclusions of law, and judgment for appellee.

Error is assigned upon the overruling of a motion for a new trial, and upon the conclusions of law.

The application for the insurance was made on April 24, 1930. The application contained the following questions and answers: "Question: Have you ever consulted a physician or practitioner for or suffered from any ailment or disease of the stomach or intestines, liver, kidneys or bladder? Answer: No. Question: Have you ever consulted a physician or practitioner for any ailment or disease not included in your above answers? Answer: Yes, flu. Question: What physicians or practitioners, if any, not named above have you consulted or been examined or treated by within the last five years? Answer: None other." The insured had consulted a physician on the 17th and 19th days of July, 1929, and on the 26th day of July, 1929, relative to a pain in the region of his kidneys. The physician, believing that the insured suffered from a kidney stone, referred him to a specialist. On July 19, 1929, he consulted a specialist,

giving a history of his illness; that it had begun a month before with pain in the region of the left kidney, which grew in frequency; that he had lost 10 pounds in weight in six weeks. The specialist made an examination, including a cystoscopic examination of the urinary tract, dilation of the ureters, and the insertion of medicine into the kidneys and bladder. The specialist diagnosed the trouble as probably a stone in the ureter. He was again consulted on July 24th and August 2nd, and the insured reported that he had passed a stone. The specialist testified that these stones are believed to be due to focal infection somewhere in the body, usually above the neck, plus lack of drainage in the urinary tract, plus lack of fluids; that the same condition may or may not produce other stones; and that he could not tell whether there is a tendency toward recurrence.

The policy was delivered to the insured on April 28, 1930. He died on June 18, 1931. His death was due to mitral stenosis, with endocarditis as a secondary cause. Officers and agents of appellant, whose duty it was to pass upon the application, testified that they relied upon the statements of the insured in approving the application, and that they would not have approved the application if the facts concerning the consultations with the doctors and the treatment for the ailment of the kidneys had been disclosed; that, if the kidney ailment had been known, the application would have been disapproved and a further investigation made for the purpose of determining whether the company "could offer substandard insurance."

Appellant contends that the false statements made in the application concerning the ailment or disease of the kidneys, and the consultations with physicians, were sufficient to constitute a cause for rescission of the contract of insurance; and that: "In order that the fact misrepresented should be material it is not necessary

that it should affect the physical risk. It is sufficient if it would have affected and influenced the judgment of the insurer in determining whether it would accept the application and issue the policy."

Appellee contends that, under clause 5 of section 39-801 Burns' Ann. St. 1933, section 9723 Baldwin's 1934, which provides: "That all statements made by the insured in the application shall, in the absence of fraud, be deemed representations and not warranties," representations need only be substantially true, and that, "whether an applicant's answer to a question as to whether he had consulted a physician for disease of the kidneys was false, or substantially true, will depend upon whether the ailment of the kidney for which he consulted a physician seriously affected the general soundness and healthfulness of his system."

It would seem to be obvious that questions in an application for life insurance, which deal with the past health of the applicant, are intended to elicit information from which the company may determine whether or not to assume the risk and issue the policy, and that a deliberate false answer that the applicant had never consulted a physician concerning, or suffered from, any ailment or disease of the kidneys or bladder, and the false answer that he had never consulted any physician within five years, other than those named in the application, when, in fact, within a year he had consulted two physicians, one a specialist, and submitted to severe exploratory examinations, resulting in a diagnosis, afterwards confirmed, of a severe and painful ailment, are sufficient in themselves to establish fraud, which would make the statements warranties, and not representations, under the statute. It is inconceivable that the false answers could be accounted for by mistake or inadvertence, or misunderstanding of the plain, simple questions, or forgetfulness

of such a recent and painful experience. But, if it be assumed that there is no fraud shown, the effect of the statute is to make the statements representations, and if these representations are material to the contract, and are not substantially correct, it is a sufficient defense to the policy, regardless of whether they were made fraudulently or otherwise. There is no question as to whether the representations made were substantially true. They were admittedly false. There is no claim or contention, and no finding of facts or evidence, that the company was not deceived, or that it knew that the answers were false and waived the question. Were the answers material? The appellee says no, unless the ailment of the kidneys, for which he consulted a physician, seriously affected the general soundness and healthfulness of his system. In other words, it is appellee's contention that, even though the facts misrepresented are such as would have affected the judgment of the insurer in determining whether or not it would issue the policy, the representations concerning them, though false, are not material.

In *Mutual Benefit Life Insurance Co.* v. *Miller, Adm'x* (1872), 39 Ind. 475, 483, 486, this court said: "A representation differs from a warranty; for while the latter must be true, the former need only be substantially true—true so far as the representation was material to the risk. A fact is to be deemed material, if a knowledge of it would have induced the insurer to have refused the risk or to have charged a higher rate of premium for taking it." Because it was not in accordance with the law as thus stated, the following instruction was held to have been erroneously refused: "The contract between the insurance company and the insured is like a contract between two individuals. If one makes false statements with reference to facts material to the settlement of the terms upon which the contract

shall be made, which are exclusively within his own knowledge, and thereby induces the other to agree to terms which he might not otherwise have assented to, the party deceived cannot be held liable upon the contract."

In *Commonwealth's Insurance Co.* v. *Monninger* (1862), 18 Ind. 352, 360, 361, the court defines representations, as they affect insurance contracts, as: "A verbal or written statement, made by the assured to the underwriter, before the subscription of the policy, as to the existence of some fact, or state of facts, tending to induce the underwriter more readily to assume the risk, by diminishing the estimate he would otherwise form of it. . . . It is a part of the preliminary proceedings which propose the contract; and a warranty is a part of the contract, as it has been completed. . . . A want of truth in the representation, is fatal or not to the insurance, as it happens to be material or immaterial to the risk undertaken." The representations in question in that case related to the position of certain buildings surrounding the one which was insured against loss by fire. In answer to an interrogatory, the jury answered that the applicant had made no untrue answers by which the defendant was deceived. The answers were untrue, but the company was not deceived.

In *Metropolitan Life Insurance Co.* v. *Head* (1927), 86 Ind. App. 326, 328, 157 N. E. 448, 449, it is said: "It is well established that, if representations in an application for insurance are false and material, that is, are such as would have influenced the action of the company upon the application in regard to whether or not it would grant the insurance, the policy will be vitiated, unless the company has in some way waived the benefit of it by its conduct and with knowledge of the facts."

Appellee has cited *Prudential Insurance Co.* v. *Sellers* (1913), 54 Ind. App. 326, 102 N. E. 894, and the cases

there cited, in support of its contention, but there is nothing in any of those cases which in any way conflicts with the authorities above cited. It is true that, in citing and quoting from older cases, there seems to have been confusion or failure to distinguish between language used in construing contracts and applications, with a view to determining the information sought to be elicited by questions, and statements dealing with the question of materiality where the questions were not limited in their scope. It is pointed out in the recent case of *Geer* v. *Union Mutual Life Insurance Co.* (1937), 273 N. Y. 261, 7 N. E. (2d) 125, 127, 128, 129, that, in some cases:

"The decision that failure to disclose a visit for medical advice creates no fatal infirmity in the policy of insurance thereafter issued rests upon construction of the application and determination that failure to disclose such a visit constitutes no suppression of the truth and, thus, no false representation that there had not been such a visit rather than upon determination that, though a false representation was made, it was not material. True, the test of whether the ailments, for which medical advice or treatment was sought, were trivial, may be decisive in either view of the question, and there may in most cases be no occasion to draw such distinctions. . . . An applicant may hardly be expected to remember each occasion upon which he sought medical advice for a trivial ailment which passed away leaving no permanent effect; and a question in an application blank may not reasonably be construed as calling for information, which the person to whom the question is posed, could not be expected to remember. That proposition is self-evident. Equally clear is the proposition that a failure by the applicant to disclose a visit which the applicant could not reasonably be expected to remember could not mislead the insurance

company and, therefore, would not be a material misrepresentation. Thus in a case where the courts have held that the medical visit was for advice in regard to an ailment so trivial that an applicant was not called upon to remember or to give information concerning it, the courts have not always kept distinct, in word or thought, the grounds upon which failure to disclose information concerning medical visits might be regarded as inconsequential. . . . .

"The salient features of the problem presented in this case are these: The insurance company did not agree that a jury might decide what risks the company should accept. It reserved that choice to itself, and in order to determine whether in a given case it should exercise that choice, it required certain information of each applicant. Here the applicant gave erroneous information, and the insurance company acted upon the information it received. If the truth had been disclosed, it might perhaps have rejected the application or it might have accepted it. No person can say with any degree of certainty what action it would have taken, but it cannot be doubted that the erroneous statement deprived the company of its freedom of choice and that it acted upon a statement of facts which did not exist and if the truth had been disclosed, it might, reasonably, have acted differently. It follows then that the representation was material as matter of law."

The test of materiality, then, is not found by answering whether the information withheld was concerning an illness that affected the risk, but in answering whether it was of such a character that it might reasonably have influenced the insurer in accepting the risk or fixing its terms.

That the case was tried below upon appellee's theory that the materiality of the false answers was to be de-

termined from the standpoint of whether the ailments seriously affected the general health of the applicant, seems clear. The court expressly found "that the kidney ailment hereinabove referred to was in no way connected with the death of the insured and had no part in causing said death." But, if the subject-matter was material, the company might have brought an action to cancel the policy before the death of the insured. There was evidence that, had the true facts been disclosed, the company would not have written the policy. The controlling question of whether the truth might reasonably have affected the company's judgment in writing the policy seems not to have been considered.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.