Mary F. BILLINGTON, Plaintiff-Appellee,

v.

The PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Defendant-
Appellant.

No. 12161.

United States Court of Appeals
Seventh Circuit.

April 9, 1958.

B. Howard Caughran, Indianapolis, Ind., Walter W. Siebert, Chicago, Ill., Dowden, Denny, Caughran & Lowe, Indianapolis, Ind., C. Malcolm Moss, Chicago, Ill., of counsel, for appellant.

Aribert L. Young, Indianapolis, Ind., James A. Colvin, Indianapolis, Ind., for appellee.

Before HASTINGS and PARKINSON, Circuit Judges, and WHAM, District Judge.

HASTINGS, Circuit Judge.

The Prudential Insurance Company of America appeals from a judgment entered for appellee as beneficiary under a $10,000 life insurance policy issued by that company on the life of appellee's husband. The case was tried without a jury and, on this appeal, appellant charges error in the failure of the trial court to grant defendant's motion for judgment filed at the close of all the evidence, in its adoption of certain findings and conclusions of law, and in its entry of judgment for appellee.

The policy in question was issued July 1, 1953 and the insured died less than

two years later, within the contestable period, on April 20, 1955. Claim for proceeds of the policy and a proof of death form were submitted to the company shortly thereafter. The proof of death showed that insured had died of Hodgkin's disease of two and one-half years duration. After proper investigation of the circumstances, the insurance company elected to rescind the policy on the ground that insured had made material misrepresentations as to his prior state of health and medical history in the application for the policy. On June 8, 1955 appellee was informed that the company could not honor her claim, and all premiums paid on the policy were tendered to her. This offer was at first refused, but the following month, after consulting someone in the office of the Insurance Commissioner of the State of Indiana where she received no satisfaction, appellee accepted the return of premiums and signed a release. This action was commenced eight months later, the money representing premiums plus interest being deposited by appellee with the clerk of the trial court on June 21, 1957.

On these admitted facts a serious question arises whether or not there was a mutually agreed upon rescission or cancellation of the insurance contract. Appellee in accepting the money tendered by the insurance company was aware that it represented a return of premiums, and she signed what appears to be a standard form releasing any claim she might have had under the policy. Although we have been cited to no Indiana cases on this precise point, there is support for the proposition that, after death of the insured, an acceptance of a tender of premiums by the beneficiary amounts to a rescission of a voidable policy by consent. Peterson v. New York Life Insurance Co., 1932, 185 Minn. 208, 240 N.W. 659, 80 A.L.R. 180; Tully v. New York Life Insurance Co., 1930, 228 App. Div. 449, 240 N.Y.S. 118; 80 A.L.R. 185. Cf. Meyer v. Johnson, 1935, 7 Cal.App.2d 604, 46 P.2d 822, 823. It is clear that in Indiana after the death of the insured, a tender of premiums for avoidance of a policy of insurance for false material representations in the application must be made to the beneficiary. Grand Lodge of Brotherhood of Railroad Trainmen v. Clark, 1920, 189 Ind. 373, 127 N.E. 280, 18 A.L.R. 1190; Sofnas v. John Hancock Mutual Life Ins. Co., 1939, 107 Ind.App. 539, 21 N.E.2d 425; American Central Life Ins. Co. v. Rosenstein, 1910, 46 Ind.App. 537, 92 N.E. 380. The tender of premiums was thus made to the proper party.

There is no contention that the insurance company exercised fraud or coercion in its dealings with the beneficiary. She accepted the money and retained it for a considerable period of time with a full understanding of the good faith position of the company, knowing that certain statements in the insured's application for insurance were not true. Although she was not given a copy of the release she signed, she testified that she knew the money represented a return of premiums paid. Even characterizing the release a "receipt" as the trial court does in its findings, the fact remains that the beneficiary, being cognizant of the company's position, could not possibly have expected to retain the premiums and still recover the benefits under the policy.

However, apart from consideration of whether, pursuant to general law, there was completed mutual rescission of the policy, we find that, under the applicable Indiana law, the policy should be avoided due to false material representations of the insured in his application for the policy. The answers to certain health questions in Part 2 of the application which was signed by the insured denied that he had consulted or been attended by a physician during the previous five years, that his weight had changed in the past year, that he had a run down condition or that he had any indication of a blood or gland disorder. The findings of the trial court disclose that for a long time prior to the date of his death the insured had visibly enlarged lymph glands of the neck. During 1950 or 1951 he experienced swelling of the lymph

glands in the armpits and sought treatment at the Indianapolis Industrial Clinic. In 1952, the insured while working at two full time jobs became run down, fatigued and lost weight; and in the fall of that year, approximately six months before he applied for the policy, he consulted Dr. Riggs, his family doctor, who referred him to Dr. Fouts, a specialist in hematology. Dr. Fouts conducted a blood and bone marrow test and advised that a biopsy of one of the enlarged glands be made at the local hospital. The insured refused to submit to a biopsy. The specialist did not diagnose the case but wrote to Dr. Riggs of his suspected diagnosis of Hodgkin's disease.

■ The district court found that the insured was not guilty of fraud in answering the questions on the application and was at no time, prior to the application for the policy, aware of the seriousness of his illness. However, it has been held in Indiana, that false representations, concerning a material fact, which mislead, will avoid an insurance contract, like any other contract, regardless of whether the misrepresentation was made innocently or with fraudulent design. Metropolitan Life Ins. Co. v. Becraft, 1938, 213 Ind. 378, 384, 12 N.E.2d 952, 955, 115 A.L.R. 93. "If the misrepresentation was brought about by forgetfullness or mistake it is just as injurious as an intentional fraud. It accomplishes a fraud upon the other contracting party by inducing him to act upon a false premise, where he would not have acted had he known the truth. * * * If there is misrepresentation of a material matter the law constructs the fraud." Id., 213 Ind. at pages 384–385, 12 N.E.2d at page 955. See also Brotherhood of Railroad Trainmen v. Virden, 1940, 216 Ind. 324, 329, 24 N.E.2d 934, 937.

The trial court's findings indicate also that the insured in applying for the policy of insurance did in fact inform the soliciting agent that he had lost weight; that he had seen doctors within the five year period specified in the application, but that they did not find anything; and that he had suffered from a run down

condition which caused him to see a doctor. The enlarged glands, according to the findings, were visible to the agent. Additionally, the court found that the medical examiner of defendant examined and personally touched and observed the insured's body including the enlarged lymph glands; that it was the medical examiner who answered the many questions on Part 2 of the application without asking the insured for the information; and, finally, that the insured signed the application without reading it before or after it had been filled in by the doctor.

■ The district court's ultimate findings and conclusions based on the above findings of fact were that the insurance company was on notice through its soliciting agent and medical examiner of all the facts which were falsely represented in the application and that the insured had himself made no false material representations to the company. However, this is not in accord with the law in Indiana, and such findings induced by an erroneous view of the law are not binding on this court on appeal. Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F.2d 217. In Metropolitan Life Insurance Co. v. Alterovitz, 1938, 214 Ind. 186, 14 N.E.2d 570, 117 A.L.R. 770, an insurance company sought to rescind a policy for false material representations in the application. The beneficiary under the policy contended that the questions had all been truthfully answered by the insured, that the agent had written in the false statements and that the insured had never read the application before or after having signed it. The Supreme Court of Indiana pointed out that in 1909 the Indiana legislature enacted a statute making the application for a policy a part of the insurance contract to be attached to the policy. Burns' Ind.Ann.Stat. § 39–4206(3) (1952 Repl.) The court then indicated that if, as alleged, the agent, with knowledge of the facts, had written in the false statements, he was violating his duty to the company. Further, if the assured signed the application without reading the statement he necessarily

joined in the agent's misconduct and could not be allowed to benefit from it. The court quoted with approval the following language from a Pennsylvania decision: " 'Inspection [of the application] would have shown that a fraud had been committed, both upon her and the company, and it would have been her plain duty to make the fact known to the company.' " Id., 214 Ind. at page 198, 14 N.E.2d at page 575.

The Indiana court placed great emphasis on the statute making the policy application a part of the contract and requiring that the application be physically attached to the policy. As in the instant case the application declared that the statements of insured were wholly true. The court held it the duty of the insured to read the application and inform the company of any errors or false statements. Having failed to do so the insured was bound by the answers on the application. Parol evidence could not be introduced to vary the contract by indicating that the answers were not those given by the insured to the agent.

In the case of Brotherhood of Railroad Trainmen v. Virden, 1940, 216 Ind. 324, 329, 24 N.E.2d 934, 937, also involving false material representations, the, Supreme Court of Indiana in passing on the contention that knowledge of the agent is notice to the insurer stated:

"If the wife did not disclose the true facts when she executed the application, she practiced a fraud on the insurer by means of concealment, for and by which her husband was bound. If she did tell Campbell the truth, and he falsified the application which she thereafter signed, it would be equally fatal to her right to recover. * * * Knowledge upon the part of Campbell could not be imputed to the brotherhood if he was acting in collusion with Virden, or his wife, as his agent, in concealing the material facts. * * * Upon either hypothesis, the verdict on which the judgment rests is contrary to law and it is not sustained by the evidence. It is therefore un-

necessary to notice the other alleged errors."

■■ The question of whether the false representations in the application for a policy are material to the risk is, in Indiana, usually considered one of fact unless under the evidence there could be no reasonable difference of opinion. New York Life Insurance Co. v. Kuhlenschmidt, 1941, 218 Ind. 404, 420, 33 N.E. 2d 340, 345, 135 A.L.R. 397; Metropolitan Life Ins. Co. v. Becraft, 1938, 213 Ind. 378, 388, 12 N.E.2d 952, 956. In Brotherhood of Railroad Trainmen v. Virden, 1940, 216 Ind. 324, 328, 24 N.E. 2d 934, 937, the Indiana Supreme Court held certain representations to be material to the risk, as a matter of law. The trial court in the instant case made no findings on the question of materiality of the misrepresentations unless the ambiguous Findings 20, 21, and 22 could be so construed. The court in its Finding 20 stated that the information supplied by the insured "did not materially influence the defendant in acting upon said application * * *." In Finding 22 it indicated that, "defendant did not rely upon any false material representations or statements of [the insured] * *." The test of materiality in Indiana, however, "is not that the company *was influenced* but that the facts if truly stated *might reasonably have influenced* the company in deciding whether it should reject or accept the risk." (Our emphasis.) New York Life Insurance Co. v. Kuhlenschmidt, 1941, 218 Ind. 404, 420, 33 N.E.2d 340, 346-347. If these findings are to be construed as pertaining to the materiality of the representations (rather than findings that the insured himself made no representations at all upon which the insurer relied), then the trial court applied an erroneous test of materiality.

■ The only evidence on the question of materiality of the false representations was submitted by the insurance company. Two doctors with several years experience as medical directors of insurance companies were asked what their recommendation to the insurance

company would have been if the application for the policy had indicated that for ten to eleven months prior to that time the insured had lost weight and had consulted two physicians because of fatigue and swollen glands on his neck. Dr. Oberlander, medical director of defendant, stated he would have recommended rejection of the application; Dr. Pearson, who had no connection with the defendant, testified that he would have suggested further investigation to determine the final diagnosis of the attending physician. In addition, an insurance underwriter with thirty years experience, four of them with defendant, testified that if the questions on the insured's policy application had been correctly answered, the insurance company's practice would have required that he postpone passing on the application until he could get a diagnosis from the applicant's attending physician. Thus, the uncontroverted evidence is that appellant or any insurance company, under such circumstances, might reasonably have been influenced in determining whether to accept or reject the risk. A finding of the trial court to the contrary would have no basis on the record in this case.

The trial court stated in Finding 37 that "the delay of the defendant [insurance company] from July 1, 1953, to June 8, 1955, in electing to rescind said policy of insurance was unreasonable." This finding is based on the theory that the knowledge of the company's agents was notice to the company of the facts misrepresented, which is not the law in Indiana. See the Alterovitz and Virden cases supra.

The court's Findings 34, 35 and 36 relate to the fact that the insurance company's district manager visited the insured in the hospital approximately two months prior to his death, and that he then became aware that the insured was seriously ill with Hodgkin's disease. The implication is that with the knowledge acquired at that time, the district manager was under an obligation to elect either to affirm or rescind the policy. However, the district manager was

aware only of the fact that the insured was dying from Hodgkin's disease. Having no knowledge that false material representations were made in the application, he had no basis for an election to rescind the policy at that time.

We hold, under the applicable Indiana law on the effect of false material representations embodied in an insured's application for insurance, that the district court erred in the adoption of certain of its findings of fact and conclusions of law as indicated in this opinion; in its entry of judgment for appellee; and in its failure to grant appellant's motion for judgment filed at the close of all the evidence. The judgment is reversed and the cause remanded with instructions to the trial court to enter judgment for appellant, and to direct a return of the sum representing premiums paid plus interest ($560.29) to appellee.