MAYFLOWER INSURANCE EX-
CHANGE, Appellant,

v.

Robert Dean GILMONT, Rose Marie Gilmont and Ronald A. Watson, Guardian ad Litem for Susan Rose Gilmont, a minor, Robert Russell Gilmont, a minor, and Norman I. Gilmont, a minor, Appellees.

No. 16394.

United States Court of Appeals
Ninth Circuit.

June 21, 1960.

**14**

Arthur S. Vosburg, Frank McK. Bosch and Vosburg, Joss, Hedland & Bosch, Portland, Or., for appellant.

Krause Lindsay, Nahstoll & Kennedy, Jack L. Kennedy, Holger M. Pihl, Jr., Portland, Or., for appellee.

Before STEPHENS, JERTBERG and MERRILL, Circuit Judges.

MERRILL, Circuit Judge.

Appellant Mayflower Insurance Exchange has brought this action to secure a declaration of its rights and obligations under a policy of insurance issued by it to one McKinzie in Portland, Oregon, on April 16, 1957. Appellees Gilmont were injured on June 8, 1957, when the automobile in which they were riding collided with that driven by McKinzie. They assert negligence on the part of McKinzie and liability on the part of appellant under its insurance policy.

This action is founded upon the contention of appellant that the insurance policy is void since its issuance resulted from fraudulent misrepresentations of fact by McKinzie. Judgment of the District Court, pursuant to jury verdict, was for appellees. Federal jurisdiction is founded upon diversity of citizenship.

The record establishes the following facts: On April 16, 1957, at the close of the business day in Portland, Oregon, McKinzie walked into the office of an insurance agency representing Mayflower and advised their office manager that he wished to secure an automobile liability policy covering a car which he had purchased earlier in the day from a used car dealer. McKinzie had never had any previous dealings with the agency or with its manager or with Mayflower. He had been referred to the agency by the owner of the used car lot who had already called the agency and furnished some information. Mayflower's procedure required of its agents that certain information be obtained, and a form to be filled out in triplicate had been furnished the agency for this purpose. The manager was alone in the office and proceeded to ask questions of McKinzie and, from the answers given to him, filled in the necessary blanks upon the application form. All of the questions appearing upon the application form were read aloud and McKinzie orally made the answers, which in turn were written down on the application by the manager. Among the questions so asked and the answers so supplied were the following:

"Q. Have you had a license revoked or suspended? A. No.

"Q. Have you received any driving charges, citations or fines (not parking) in the past three years? A. No.

"Q. Name of previous insurer? A. None."

Following the automobile accident of June 8, 1957, Mayflower, in the course of its investigation, learned for the first time that these answers were false. The investigation disclosed that McKinzie had had his license suspended in the State of Oregon; that he had had a traffic violation in the State of Oregon and three in the State of California within three years prior to application; that he had had prior insurance with other companies.

Mayflower assigns as error the giving of an instruction dealing with the subject of negligence on its part in securing from McKinzie the information which, it now claims, constituted misrepresentations of fact.

The District Court instructed that an issue had been raised "as to whether the agent at the time he took the answers from McKinzie acted with ordinary reasonable care for the protection of his own company." Upon the law the jury was instructed:

"Therefore, if you should find from the evidence that the plaintiff, acting through its agent, was careless and did not act as a reasonably prudent person, being an insurance company, in obtaining the answers from McKinzie while filling out the application for insurance by Mr. McKinzie, and thereby blindly or recklessly put down defendant's answers to the question without reasonable credulence, you should then find that the plaintiff is not entitled to be relieved of obligation under its policy because then through such action and conduct he would have been, become a party to the transaction.

"However, if you find that the plaintiff's agent while taking down the answers acted reasonably in accepting the answers given to him by McKinzie, then McKinzie is bound by his own doings as you shall find them from all of the evidence in the case subject to these instructions."

With reference to this instruction Mayflower asserts that it owed no duty of care to McKinzie or to the Gilmonts and that the giving of the instruction therefore was erroneous.

Assuming, arguendo, that no duty was owing to McKinzie, does it follow that no duty was owing to the Gilmonts? It is urged that we should realistically recognize the fact that today liability insurance is widely regarded as a prerequisite to the privilege of operating a motor vehicle; that its issuance, more than an indemnity of the driver, is an assurance to the public that the driver is qualified and is financially able to meet the monetary consequences of his negligence; that the insurer, with knowledge that there will be public reliance upon the fact of insurance, does owe a duty of care to the public. In 4 Corbin on Contracts, § 807, page 214, it is stated:

"There is a tendency, however, for the states to require by legislation the carrying of liability insurance for the protection of third parties. Policies that are issued by virtue of such legislation should be interpreted as being for the benefit of the injured third party and should be held to give him an enforceable right against the insurer."

■ Oregon has a financial responsibility statute, O.R.S., ch. 486. This statute provides that liability of the insurer becomes absolute at the time of an accident and that he cannot thereafter avoid the policy on the ground of fraud of the insured. O.R.S. 486.551. Such liability, however, is specifically limited in operation to policies issued under the financial responsibility law. It does not appear, and it is not contended, that the policy with which we are concerned was issued under that law.

Aside from this statutorily declared policy, we have been cited to no case, and have found none, where a duty independent of that owed to the insured runs to the injured parties.[1] Under the present state of the law, we must conclude that the rights of the Gilmonts are no greater than those of McKinzie. See, Allegretto v. Oregon Automobile Insurance Co., 1932, 140 Or. 538, 13 P.2d 647; Cassidy v. Liberty Mutual Insurance Co., 1958, 338 Mass. 139, 154 N.E.2d 353; Safeco Insurance Company of America v. Gonacha, Colo.1960, 350 P.2d 189; Adriaenssens v. Allstate Insurance Co., 10 Cir., 1958, 258 F.2d 888 (Oklahoma law); Tri-State Insurance Co. v. Ford, D.C.N.M.1954, 120 F.Supp. 118 (Texas law).

■ The question, then, is whether McKinzie could, notwithstanding his own false representations, assert that the agent of Mayflower was guilty of negligence either in obtaining or in accepting the answers given by McKinzie. The first involves an alleged duty to conduct a more careful application interview; the second raises the question of the presence of facts sufficient to put the insurer on inquiry, the theory being that a man cannot claim to have been misled when he closes his eyes to facts which, if considered, would have disclosed the falsity of the representations. New York Life Insurance Co. v. Strudel, 5 Cir., 1957, 243 F.2d 90; Provident Life & Accident Insurance Co. v. Hawley, 4 Cir., 1941, 123 F.2d 479; Columbian National Life Insurance Co. v. Rodgers, 10 Cir., 1940, 116 F.2d 705, certiorari denied, 313 U.S. 561, 61 S.Ct. 838, 85 L.Ed. 1521; Bankers Life Co. of Des Moines, Iowa v. Sone, 5 Cir., 1936, 86 F.2d 780; Love v. Metropolitan Life Insurance Co., D.C.E.D.Pa.1951, 99 F.Supp. 641; Haas v. Integrity Mutuals Insurance Co., 1958, 4 Wis.2d 198, 90 N.W.2d 146; Kobierowski v. Commonwealth Mutual Insurance

Co., 1956, 180 Pa.Super, 568, 119 A.2d 601; Travelers Insurance Co. v. Eviston, 1941, 110 Ind.App. 143, 37 N.E.2d 310.

Aside from their complaint that Mayflower in every case should conduct a more thorough examination before issuing insurance (which is not the point involved), the negligence suggested by appellees is the filling out of the application in approximately ten minutes at closing time by an agent who did not know the applicant and who failed to become suspicious over the fact that McKinzie, age forty, had had no prior insurance. The agent also stated in the application that he had examined the car when in fact he had not.

As it is undisputed that all of the questions upon which misrepresentations were made were orally presented to McKinzie, we fail to see any fault in the conduct of the interview. The failure to examine the car (apparently covered by the information furnished to the agent by the owner of the used car lot) and the time and length of the interview do not in any way affect that which actually was done. In a state where insurance need not be carried, the failure to grow suspicious over a lack of prior insurance is wholly inadequate to constitute a disregard of facts sufficient to put one on inquiry. There was, then, no evidence warranting the giving of the instruction in question and the giving of that instruction must be held to be error.

Mayflower contends that, upon reversal, it is entitled to judgment as a matter of law; that no issues of fact remain for jury determination. Upon this we disagree. The question remains as to whether the false representations of McKinzie were material to the issuance of the policy.

■ The test in Oregon, so far as we can see,[2] is whether knowledge of the

---

1. Compare cases holding a judgment of rescission after accident in favor of the insurer against the insured is not binding upon injured third parties who were not parties thereto. E. G., New Amsterdam Casualty Co. v. Murray, 6 Cir., 1957, 242

F.2d 549; Dransfield v. Citizens Casualty Co., 1950, 5 N.J. 190, 74 A.2d 304, 18 A.L.R.2d 887.

2. See O.R.S. 741.150(3) (not applicable to liability policies); Walker v. Fire-

concealed facts would reasonably have influenced the company in accepting the risk or fixing the premium. See, Monumental Life Insurance Co. v. Taylor, 1957, 212 Md. 202, 129 A.2d 103; Commercial Standard Insurance Co. v. Paul, 1951, 35 Tenn.App. 394, 245 S.W.2d 775; Carroll v. Carolina Casualty Insurance Co., 1947, 227 N.C. 456, 42 S.E.2d 607; New York Life Insurance Co. v. Kuhlenschmidt, 1941, 218 Ind. 404, 33 N.E.2d 340, 135 A.L.R. 397.

■ Materiality is a question of fact. It is a question for the jury when reasonable minds can differ as to its existence. See, e. g., Haas v. Integrity Mutuals Insurance Co., supra; Smith v. John Hancock Mutual Life Insurance Co., 5 Cir., 1957, 249 F.2d 657; Nielsen v. Mutual Service Casualty Co., 1954, 243 Minn. 246, 67 N.W.2d 457; Marshall v. Metropolitan Life Insurance Co., 1950, 405 Ill. 90, 90 N.E.2d 194; Metropolitan Life Insurance Co. v. Becraft, 1938, 213 Ind. 378, 12 N.E.2d 952, 115 A.L.R. 93.

■ Our question, then, is whether upon the record before us it may be said that reasonable minds could differ as to whether knowledge by Mayflower of the concealed facts would reasonably have influenced that company to refuse issuance of the policy. An examination of the facts concealed therefore becomes necessary.

There were three suspensions of license. The first two were upon financial matters; failure to prove financial responsibility; failure to satisfy a judgment. The third was for operating a car without a muffler. Mayflower's underwriting manager testified that the company's agents had instructions not to write insurance for persons whose licenses had been suspended. However, it can be noted that none of McKinzie's sus-

pensions reflected upon his manner of driving.[3]

As to McKinzie's denial of prior insurance, it does not appear that any prior insurance ever was cancelled or that facts regarding such insurance would in any respect have related to the risk assumed by Mayflower. Disclosure of the existence of prior insurance would have permitted investigation by Mayflower had the company chosen to investigate. What such investigation would have disclosed relating to the risk does not appear.

As to traffic violations the record shows that in 1956, in Oregon, McKinzie was cited for operating a car without a muffler. There were three California violations: June 2, 1954, speeding, $30.00 bail forfeited; August 17, 1954, stop sign violation, $6.00 bail forfeited; April 6, 1955, speeding, $11.00 bail forfeited. As to the significance which Mayflower would have placed upon these violations, the company manual was the only explicit evidence. That manual, introduced as an exhibit, provides that insurance would be issued only after a complete report was had on persons with " * * * (3) Two or more accidents or moving traffic violations *within 2 years*." All three of McKinzie's California citations had occurred more than two years prior to application. As to the muffler violation Mayflower's underwriting manager conceded that it would have had very little bearing on underwriting determination.

The only other testimony respecting materiality was the statement by the underwriting manager to the effect that if *all* the facts had been known the policy would not have been issued.

Upon this record we are satisfied that Mayflower's self-serving declaration of materiality cannot be held conclusive;[4]

---

man's Fund Insurance Co., 1925, 114 Or. 545, 555, 234 P. 542, 547.

3. Compare Adriaenssens v. Allstate Insurance Co., supra (license revoked twice for drunken driving); State Farm Mutual Automobile Co. v. West, D.C.Md.1957, 149 F.Supp. 289 (hit and run and accumulated tickets); Allstate Insurance

Co. v. Miller, 1950, 96 Cal.App.2d 778, 216 P.2d 565 (drunken driving).

4. New York Life Insurance Co. v. Kuhlenschmidt, Ind.1941, 31 N.E.2d 1000; Government Personnel Automobile Association v. Haag, Tex.Civ.App., 1939, 131 S.W.2d 978; Metropolitan Life Insurance Co. v. Becraft, supra.

that reasonable minds could differ as to whether these facts so concealed, standing alone, would have influenced Mayflower not to issue the policy in question. The materiality of the misrepresentations, then, remained a question of fact.

Appellees contend that other factual issues in addition to materiality remain for jury determination. This contention we need not consider since it is clear that, upon reversal, a new trial becomes necessary.

Reversed and remanded for new trial.